11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Larry
Smith

Appellant

Vs.                   No. 11-03-00216-CR -- Appeal from Harris County

State
of Texas

Appellee

 

Larry Smith appeals his conviction by a jury of
the offense of bail jumping B
failure to appear.  The jury assessed his
punishment at confinement for 5 years in the Texas Department of Criminal
Justice, Institutional Division, and assessed a $2,500 fine.  He contends in three issues that (1) the
evidence is legally and factually insufficient to support his conviction; (2)
he was denied the effective assistance of counsel; and (3) he was denied a fair
trial by prosecutorial misconduct.  We
affirm.

Smith urges in issue one that the evidence is
legally and factually insufficient to support his conviction.  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex.Cr.App.2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Cr.App.1992).  The critical inquiry is whether, after so
viewing the evidence, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  McDuff v. State, 939 S.W.2d 607, 614
(Tex.Cr.App.), cert. den=d,
522 U.S. 844 (1997).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979).








In order to determine if the evidence is factually
sufficient, we must review all of the evi-dence in a neutral light and
determine whether the evidence supporting guilt is so weak that the verdict is
clearly wrong and manifestly unjust or whether the evidence contrary to the
verdict is so strong that the beyond-a-reasonable-doubt burden of proof could
not have been met.  Zuniga v. State,
No. 539-02, 2004 WL 840786 (Tex.Cr.App. April 21, 2004); Ross v. State,
133 S.W.3d 618 (Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
In performing this review, we are to give due deference to the fact
finder=s
determinations.  Johnson v. State,
23 S.W.3d 1, 8-9 (Tex.Cr.App.2000); Clewis v. State, supra at 136.  Consequently, we may find the evidence
factually insufficient only where necessary to prevent manifest injustice.  Johnson v. State, supra at 9, 12; Cain
v. State, supra at 407.

Lee Hampton, a bail bondsman, identified a bail
bond executed by Smith in Cause No. 0893146. 
The form indicated that Smith was to report to the 179th District Court
of Harris County.  Hampton stated that
his office gives a courtesy call to all defendants, to the number provided by
them, the day before every court appearance. 
He testified that, if a defendant does not appear, the trial court
issues a warrant for his or her arrest. 
He said that he received word that Smith did not appear as
required.  He indicated that he was not
aware of the date upon which Smith failed to appear.  Hampton also stated that the judgment
forfeiting the bond was signed on February 21, 2002, and that an arrest warrant
was issued for Smith for his failure to appear in court on February 19,
2002.  Hampton acknowledged that he did
not specifically remember getting a call concerning Smith not appearing on
February 4, A1999@ (sic). 


Deborah Binford testified that she is a district
clerk in felony court for the Harris County District Clerk=s Office.  She identified a docket sheet for Cause No.
0893146 in which Smith was the defendant. 
She said that the docket sheet indicated the defendant was to appear on
February 19, 2002.  She stated that the
docket sheet reflected that on that date there was a motion to withdraw by
Smith=s
attorney and a forfeiture of Smith=s
bail bond.  She testified that a bond
forfeiture occurs when a bailiff calls the defendant=s
name at the door and the defendant does not answer.  She said that the docket sheet reflects that
the bailiff called Smith=s
name at the door but that he did not appear. 
Binford testified that, if Smith had answered the call, they would have
either continued the case at that time or reset it to a later date.  Binford also identified an agreed setting for
February 19, 2002, signed by Smith and his attorney.   Binford acknowledged that she did not
personally know whether Smith appeared in court on February 19, 2002, or
whether the bailiff actually called his name at the door.








Craig William Uhran testified that he has been a
criminal defense attorney for 27 years. 
He said that he remembered representing Smith.  When asked if he saw Smith in the 179th
District Court on February 19, 2002, Uhran stated:  AI
believe I did.  I don=t know if he was inside the court, but
I believe I saw him on the floor, on the 8th floor.@  He also said: AAnd
I think in fact he probably was in the court.@  He concluded by indicating that, to the best
of his recollection, Smith was actually in court on that particular date.  Uhran acknowledged that, when he gives a
defendant a reset form, he states the date the defendant is next to
appear.  He also acknowledged that Smith
was neither with him nor present in court when he presented his motion to
withdraw to the court.  He also conceded
that generally, had Smith been there, he would have been standing with him in
front of the judge when he presented the motion to withdraw.  He said that it would be unusual, if Smith
had been present, to approach the judge and withdraw without the defendant
being present in front of the judge also. 
Uhran further acknowledged that there was no reset form signed on
February 19, 2002.  Uhran stated that,
when he saw Smith in court, he told Smith to stay in court until he got there,
but Smith apparently did not.  Uhran said
that he believed that, if Smith had stayed in court, even after he withdrew as
his attorney, he would have been given a reset form with a new date to come
back to court with a new attorney.  

As we understand Smith=s
argument, it is that the evidence is insufficient because his attor-ney
believed that he had seen him either in the courtroom or on the floor of the
courthouse where the courtroom was located and that this presence complied with
his requirement under the terms of the bail bond because the term Adischarged by due course of law@ was not defined in the court=s instructions.

The bail bond requires that the defendant is to
make Ahis
personal appearanceYfor any
and all subsequent proceedings that may be had relative to said chargeYand there remain from day to day and
term to term of said courts, until discharged by due course of law.@ 
The jury was not required to believe Uhran=s
testimony that he had seen Smith somewhere near the court on the day in
question.  Even if it did, the evidence
presented is sufficient to show that he did not appear that day.  The evidence also showed that his case was
ongoing.  There is no evidence that Smith
had in any way been discharged from the charges against him or absolved from
responsibility under the bail bond.  In
fact, the bail bond was forfeited for his failure to appear.  We hold that the evidence is legally and
factually sufficient to support Smith=s
conviction.  We overrule issue one.








Smith insists in issue two that he was denied the
effective assistance of counsel.  He
lists 20 bases for his complaint.  We
apply a two-pronged test to ineffective-assistance-of-counsel claims.  Strickland v. Washington, 466 U.S.
668, 687 (1984); Thompson v. State, 9 S.W.3d 808, 812
(Tex.Cr.App.1999).  First, appellant must
show that his counsel=s
performance was deficient; second, appellant must show that the deficient
performance prejudiced the defense.  Strickland
v. Washington, supra at 687.  

In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson
v. State, supra at 813.  The issue is
whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  Strickland v. Washington, supra at
688-89. A[C]ounsel
is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment.@ 
Strickland v. Washington, supra 
at 690.  An allegation of
ineffective assistance must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness.  Thompson v. State, supra at 814.  Our scrutiny of counsel=s performance must be highly
deferential, and every effort must be made to eliminate the distorting effects
of hindsight.  Strickland v.
Washington, supra at 689.  

The second prong of Strickland requires a
showing that counsel=s
errors were so serious that they deprived the defendant of a fair trial, i.e.,
a trial whose result is reliable.  Strickland
v. Washington, supra at 686-87.  In
other words, appellant must show there is a reasonable probability that, but
for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland v. Washington,
supra at 694.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Strickland v. Washington,
supra.  The ultimate focus of our
inquiry must be on the fundamental fairness of the proceeding whose result is
being challenged.  Strickland v.
Washington, supra at 697.    








Under normal circumstances, the record on direct
appeal will not be sufficient to show that counsel=s
representation was so deficient and so lacking in tactical or strategic
decision making as to overcome the presumption that counsel=s conduct was reasonable and
professional.  Rarely will the trial
record contain sufficient information to permit a reviewing court to fairly
evaluate the merits of such a serious allegation.  Bone v. State, 77 S.W.3d 828, 833
(Tex.Cr.App.2002).  Our record does not
support Smith=s
complaints on appeal.  Consequently, the
record on direct appeal is not sufficient to show that counsel=s representation was so deficient and
so lacking in tactical or strategic decision making as to overcome the
presumption that his conduct was reasonable and professional.  We overrule issue two.     

Smith insists in issue three that he was denied a
fair trial by prosecutorial conduct during the trial.  He refers to arguments made outside the
record, improper misstatements of the law and definitions, and comments on his
silence.  It appears that Smith is
challenging the State=s
comments during closing arguments. 
However, no objections were raised at trial, and Smith has forfeited his
right to complain about such issues in this appeal.  Mathis v. State, 67 S.W.3d 918, 926-27
(Tex.Cr.App.2002).  We overrule issue
three.  

The judgment of the trial court is affirmed.

 

PER CURIAM

 

October 7, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Wright, J., and

McCall,
J., and Hill, S.J.[1]











[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth sitting by assignment.